**UNITED STATES STRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION**

| | |
|---|---|
| FEDERAL TRADE COMMISSION, | |
| Plaintiff, | CASE NO. 1:17-cv-03094-WMR |
| v. | |
| HORNBEAM SPECIAL SITUATIONS LLC, *et al.*, | |
| Defendants. | |

**EDP PARTIES' MEMORANDUM OF LAW IN SUPPORT OF THEIR
<u>MOTION FOR SUMMARY JUDGMENT</u>**

## **<u>TABLE OF CONTENTS</u>**

INTRODUCTION ................................................................................1

UNDISPUTED FACTS ........................................................................2

    **A.**    Background Facts ...................................................................2

    **B.**    Customer Authorization for Discount Club Enrollment ......4

ARGUMENT ......................................................................................8

    **A.**    Legal Standard .....................................................................8

    **B.**    The EDP Parties Are Entitled to Summary Judgment ........9

        **1.**    Each of the FTC's Claims Against the EDP Parties Fail
                  as a Matter of Law .......................................................9

        **2.**    The Remedies the FTC Seek Against the EDP Parties are
                  Unavailable as Matter of Law ....................................12

                (a)    The FTC Is Not Entitled to Monetary
                          Relief ............................................................12

                (b)    The FTC Is Not Entitled to Injunctive
                          Relief ............................................................13

CONCLUSION ..................................................................................15

# <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*AMG Cap. Mgmt., LLC v. FTC*,
   141 S. Ct. 1341 (2021) ...............................................................................12, 13

*Best Canvas Products & Supplies*, *Inc. v. Ploof Truck Lines*, *Inc.*,
   713 F.2d 618 (11th Cir. 1983) ..............................................................3

*FTC v. Merchant Services Direct, LLC*,
   2013 WL 4094394 (E.D.Wa. August 13, 2013) .................................14

*FTC v. Credit Bureau Ctr., LLC*,
   937 F.3d 764 (7th Cir. 2019) ..............................................................13

*FTC v. Evans Prods. Co.*,
   775 F.2d 1084 (9th Cir. 1985) ............................................................13

*FTC v. Facebook, Inc.*,
   __ F.Supp. 3d __, 2021 WL 2643627 (D.D.C. June 28, 2021) ..........15

*FTC v. Shire ViroPharma, Inc.*,
   917 F.3d 147 (3d Cir. 2019) .......................................................13, 14

*Gilliard v. Dep't. of Corrections*,
   500 Fed. Appx. 860 (11th Cir. 2012)....................................................9

**Statutes**

15 U.S.C. § 53(b)(1).................................................................................13

15 U.S.C. § 57b........................................................................................13

FTC Act........................................................................ 2, 4, 9, 10, 12, 13, 14, 15

Restore Online Shoppers' Confidence Act ..........................................9, 10

**Rules**

Fed. R. Civ. P. 56(a)....................................................................................8

COME NOW Defendants Dale Paul Cleveland ("Cleveland"), William R. Wilson ("Wilson"), and EDebitPay, LLC ("EDebitPay," and together with Cleveland and Wilson, the "EDP Parties"), and file this, their Memorandum of Law in support of their Motion for Summary Judgement.

## INTRODUCTION

Each of the FTC's claims against the EDP Parties is based on the fundamental factual assertion that the EDP Parties debited consumer accounts for the Saving Pays Club and Money Plus Saver (collectively, the "Discount Club") without authorization. The undisputed evidence, however, establishes that no customer was charged for the Discount Club without specifically selecting the program and explicitly authorizing the charges. In particular, before a consumer was charged under the Discount Club, each such consumer was required to authorize the transaction by checking a box indicating, among other things, that they understood and authorized an electronic debit of their checking accounts for a conspicuously disclosed, one-time application and processing fee and for monthly (*i.e.*, recurring) membership fees. These facts conclusively establish that no consumers were charged without express authorization and that the FTC will be unable to prove any of its claims against the EDP Parties.

1

Further, even there were factual disputes about whether consumers were charged without authorization, the remedies the FTC seeks — monetary and injunctive relief — are unavailable to it as a matter of law. The FTC concedes that it is no longer seeking monetary relief under Section 13(b) of the FTC Act, but it is still seeking monetary relief against the EDP Parties under Section 19. Relief under Section 19 is unavailable as to the EDP Parties, however, because the FTC's claims against the EDP Parties were not asserted within Section 19's three-year statute of limitations. Finally, injunctive relief is only available for ongoing or imminent illegal conduct and is not available to enjoin past conduct. The EDP Parties ceased *all* operations in September 2013 and there is simply no evidence of any ongoing or imminent illegal conduct. The EDP Parties, therefore, are entitled to summary judgement because the remedies the FTC seeks are unavailable as a matter of law.

## UNDISPUTED FACTS

### A.    Background Facts

Prior to the sale of its assets effective September 30, 2013, Cleveland and Wilson owned and operated EDebitPay, a Nevada limited liability company based in Los Angeles, California, that sold and marketed online prepaid charge cards and related products, including memberships in online discount clubs. Dkt. 223, ¶¶ 10,

20-21, 25, 29, 43, 46; [Statement of Undisputed Material Facts ("Facts"), ¶ 1].[1] Cleveland and Wilson served as EDebitPay's Chief Executive Officer and President, respectively. *Id.* ¶¶ 20-21; [Facts ¶ 2]. EDebitPay was also the sole owner of clickXchange Media, LLC and Platinum Online Group, LLC. *Id.* ¶¶ 10, 26; [Facts ¶ 3].[2]

Cleveland and Wilson sold the entirety of EDebitPay's assets and business operations effective September 30, 2013. Dkt. 223, ¶¶ 32, 202; [Facts ¶ 5]. Since September 2013, EDebitPay has not engaged in any business activities (related to the sale of discount club memberships or otherwise), and the Nevada Secretary of State revoked EDebitPay's entity status. Dkt. 223, ¶ 201; [Facts ¶ 6].

The FTC filed this action on August 15, 2017, which was more than three years after the EDP Parties ceased all operations. Dkt. 1 and Dkt. 223, ¶¶ 32, 202; [Facts ¶ 7].

---

[1] The allegations in the FTC's complaint in this action are binding admissions. *See*, *e.g.*, *Best Canvas Products & Supplies*, *Inc. v. Ploof Truck Lines*, *Inc.*, 713 F.2d 618, 621 (11th Cir. 1983) ("judicial admissions are proof possessing the highest possible probative value. Indeed, facts judicially admitted are facts established not only beyond the need of evidence to prove them, but beyond the power of evidence to controvert them.")(citations omitted).

[2] Defendants clickXchange Media, LLC and Platinum Online Group, LLC are defunct entities with dissolved corporate statuses. Dkt. 223, ¶¶ 11-12; [Facts ¶ 4].

**B.     Customer Authorization for Discount Club Enrollment**

EDebitPay marketed and sold memberships in discount clubs branded as Saving Pays Club and Money Plus Saver. Declaration of William Richard Wilson ("Wilson Decl.") ¶ 2; [Facts ¶ 8]. These discount clubs were marketed and sold through EDebitPay d/b/a's Platinum Online Group and Premier Membership Clubs. *Id.* Saving Pays Club was sold and marketed from July 2010 to October 2012. Wilson Decl. ¶ 3; [Facts ¶ 9]. Money Plus Saver was sold and marketed from October 2012 to September 30, 2013. *Id.* EDebitPay did not market or sell the discount club branded as Saving Makes Money, as that was marketed for sale after EDebitPay ceased its business operations after all of its assets had been sold to the Hornbeam Entities effective September 30, 2013. Wilson Decl. ¶ 4; [Facts ¶ 10].

EDebitPay took the same approach to marketing both the Saving Pays Club and Money Plus Saver. Wilson Decl. ¶ 5; [Facts ¶ 11]. EDebitPay marketed memberships in these discount clubs through EDebitPay's online and offline affiliate and publisher network, which directed website traffic to the discount clubs' websites. *Id.* With respect to EDebitPay's landing webpage for consumers to apply for discount club memberships, EDebitPay created the content of the landing webpages with the goal of prominently displaying the Terms & Conditions and Privacy Policy, the separate product offerings (if any), a clear and conspicuous

disclosure at the top of the webpages that the consumer may have been directed to the webpage from a different website, information on how to contact EDebitPay customer service with questions, examples of discount club services and benefits, and instructions to consumers to read all portions of the webpage before completing and submitting the application. Wilson Decl. ¶ 6; [Facts ¶ 12].

EDebitPay obtained personal information only from consumers who enrolled themselves in Saving Pays Club or Money Plus Saver by filling out and submitting an online application. Wilson Decl. ¶ 7; [Facts ¶ 13]. To enroll in these discount clubs, all consumers were required to fill out an application with information including their full name, address, city, state, zip code, phone number, e-mail address, and bank account information. Wilson Decl. ¶ 8; [Facts ¶ 14]. Consumers would enter this information directly into the online application fields on the discount clubs' website. Wilson Decl. ¶ 9; [Facts ¶ 15]. No consumer's financial information could be transmitted unless the consumer checked a box indicating that: (1) they understood and authorized Premier Membership Clubs, Platinum Online Group, Saving Pays Club, or Money Plus Saver to electronically debit their checking accounts for a conspicuously disclosed, one-time application and processing fee of $99.00 (for Saving Pays Club) or $89.00 (for Money Plus Saver); (2) they understood and authorized Premier Membership Clubs, Platinum Online Group,

Saving Pays Club, or Money Plus Saver to debit their bank accounts for a conspicuously disclosed monthly (*i.e.*, recurring) membership fee of $14.00 (for Saving Pays Club) or $19.95 (for Money Plus Saver); (3) they understood that they could be charged an overdraft/NSF fee by their bank if their account did not contain sufficient funds, and that they should confirm that their bank account contained sufficient funds; (4) they understood that upon completion and approval of the application, they would be entitled to receive their Saving Pays Club or Money Plus Saver benefits; and (5) they certified that they are at least 18 years of age and read and agreed to the Saving Pays Club or Money Plus Saver Terms & Conditions, Privacy Policy, and membership usage fees. Wilson Decl. ¶ 10; [Facts ¶ 16]. This active check box was the consumers' affirmation that they read and agreed to the above listed information, the Privacy Policy, and Terms & Conditions for the discount club membership, and they acknowledged that they will be charged a one-time fee plus a monthly membership fee, both of which were clearly disclosed to consumers. Wilson Decl. ¶ 11; [Facts ¶ 17]. As such, all of the terms of the Discount Club membership were prominent and available on the application page. Wilson Decl. ¶ 12; [Facts ¶ 18].

Below is a screenshot example of the customer authorization:



(PX 761 at 1; Deposition of William R. Wilson ("Wilson Depo.") at 49:13-50:15;

[Facts ¶ 19]).

The application page also included direct hyperlinks to the Saving Pays Club

or Money Plus Saver Terms & Conditions, Privacy Policy, and FAQs, such that the

consumer could easily access these policies. Wilson Decl. ¶ 13; [Facts ¶ 20]. Further,

at the time the consumer submitted an application to enroll in the Saving Pays Club

or Money Plus Saver, EDebitPay would capture the application information input by the consumer, a date and time stamp, and the unique internet protocol or IP address of the consumer's computer as part of EDebitPay's authorization process. Wilson Decl. ¶ 14; [Facts ¶ 21]. As a final step, immediately after consumers submitted their applications, EDebitPay would automatically send the consumers a confirmation and thank you e-mail. Wilson Decl. ¶ 15; [Facts ¶ 22]. This e-mail informed consumers of the authorized transaction and provided consumers with a link to immediately cancel their submission if they elected to do so. *Id.*

While there were different versions of the landing pages, some involving a one step process (like the landing page identified above), *see* PX 759, and some involving a two-step process, *see* PX 760 and 762, ***all*** of the landing pages required a consumer to affirmatively check a box acknowledging and authorizing charges to their account before any transactions could be submitted. Wilson Depo. at 49:13-50:15, PX 759, PX 760, PX 762, Wilson Decl. ¶ 16; [Facts ¶ 23].

## ARGUMENT

### A.    Legal Standard

The "court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). To avoid summary judgment, the nonmoving

party must make "enough of a showing that the jury could reasonably find for that party." *Gilliard v. Dep't. of Corrections*, 500 Fed. Appx. 860, 863 (11th Cir. 2012) (citation omitted).

### B.   The EDP Parties Are Entitled to Summary Judgment

The EDP Parties are entitled to summary judgment on each of the five claims asserted by the FTC in this action: (1) Unfair Billing Practices in Violation of Section 5 of the FTC Act (Dkt. 223, Count I); (2) Deception in Violation of Section 5 of the FTC Act (Dkt. 223, Count II); (3) Violation of the Restore Online Shoppers' Confidence Act ("ROSCA") (Dkt. 223, Count IV); and (4) Violation of the FTC's Telemarketing Sales Rule ("TSR") (Dkt. 223, Counts V and VI). Additionally, the remedies the FTC requests — monetary and injunctive relief — are unavailable against the EDP Parties as a matter of law.

### 1.   Each of the FTC's Claims Against the EDP Parties Fail as a Matter of Law

Each of the FTC's claims in this action against the EDP Parties rest on one, factually unsustainable assertion; namely, that the charges to consumers for the Discount Club were "unauthorized." In particular, the FTC alleges:

- the Discount Club constituted an unfair act or practice in violation of FTC Act § 5 (Count I) because the EDP Parties "obtained consumers' bank account information and caused billing information to be

9

submitted for payment on those accounts without consumers' express informed consent." (Dkt. 223 at ¶ 609);

- the Discount Club constituted a deceptive act or practice in violation of FTC Act § 5 (Count II) because "consumers did not agree: (i) to purchase the Defendants' products or services, or (ii) to authorize the Defendants to debit money from consumers' bank accounts to pay for the Defendants' products or services." (Dkt. 223 at ¶ 613);

- the Discount Club constituted a violation of ROSCA (Count IV) because the EDP Parties failed to "obtain the consumer's express informed consent before charging the consumer's financial account for products or services through such transaction." (Dkt 223 at ¶ 622);

- the Discount Club violated the TSR (Counts V) because the EDP Parties caused consumer "billing information to be submitted for payment using a payment method other than a credit card … or a debit card … without the consumer's express verifiable authorization." (Dkt 223 at 631); and

- the Discount Club violated the TSR (Counts VI) because the EDP Parties caused consumer "billing information to be submitted for payment, directly or indirectly … without the express informed consent

of the customer to be charged for the goods or services and to be charged using a specified account; [or] without obtaining from the customer or donor his or her express agreement to be charged for the goods or services and to be charged using the identified account number." (Dkt 223 at 633).

The undisputed facts, however, establish that prior to signing up for the Discount Club, consumers authorized the transaction by checking a box indicating: (1) they understood and authorized Premier Membership Clubs, Platinum Online Group, Saving Pays Club, or Money Plus Saver to electronically debit their checking accounts for a conspicuously disclosed, one-time application and processing fee of $99.00 (for Saving Pays Club) or $89.00 (for Money Plus Saver); (2) they understood and authorized Premier Membership Clubs, Platinum Online Group, Saving Pays Club, or Money Plus Saver to debit their bank accounts for a conspicuously disclosed monthly (*i.e.*, recurring) membership fee of $14.00 (for Saving Pays Club) or $19.95 (for Money Plus Saver); (3) they understood they could be charged an overdraft/NSF fee by their bank if their account did not contain sufficient funds, and that they should confirm that their bank account contained sufficient funds; (4) they understood that upon completion and approval of the application, they would be entitled to receive their Saving Pays Club or Money Plus

Saver benefits; and (5) they certified they are at least 18 years of age and read and agreed to the Saving Pays Club or Money Plus Saver Terms & Conditions, Privacy Policy, and membership usage fees. Wilson Decl. ¶ 10 and Facts Exhibits 2, 4, 5, and 6 (PX 759-762).

The above-referenced evidence establishes that consumers authorized debits from their bank accounts as part of the enrollment process. As such, the FTC will be unable to prove the EDP Parties charged any consumer without authorization and, consequently, each of the FTC's claims against the EDP Parties fails as a matter of law.

### 2. The Remedies the FTC Seek Against the EDP Parties are Unavailable as Matter of Law

Even if the FTC were able to establish an evidentiary basis for its claims against the EDP Parties, which it cannot for the reasons discussed above, each of the remedies it seeks against the EDP Parties are unavailable as a matter of law.

### (a) The FTC Is Not Entitled to Monetary Relief

The FTC cannot obtain monetary relief against the EDP Parties. In the Complaint, the FTC seeks monetary relief under Section 13(b) and 19. Dkt. 223 at ¶ 642. As noted above, however, the FTC has abandoned its request for monetary relief under Section 13(b) because such relief is unavailable under the Supreme Court's holding in *AMG Cap. Mgmt., LLC v. FTC*, 141 S. Ct. 1341, 1348 (2021).

Dkt. 372 at 2. Additionally, to the extent the FTC seeks monetary relief under Section 19 (*see* Dkt. 372 at 2) such relief is unavailable against the EDP Parties because relief under Section 19 is subject to a three year statute of limitations. *See* 15 U.S.C. § 57b. More than three years elapsed between the time the EDP Parties ceased doing business (September 2013) and when the FTC filed this action (August 2017). Consequently, no relief of any type is available against the EDP Parties under Section 19.

### (b)    The FTC Is Not Entitled to Injunctive Relief

Section 13(b) authorizes the FTC to seek injunctive only where a defendant "is violating, or is about to violate, any provision of law enforced by the Federal Trade Commission." 15 U.S.C. § 53(b)(1). It is well established that injunctive relief cannot be based solely on past conduct. Injunctions are only authorized under the statute when there is "ongoing or imminent illegal conduct." *FTC v. Shire ViroPharma, Inc.*, 917 F.3d 147, 155 (3d Cir. 2019). Indeed, in *AMG* the Supreme Court recognized that the FTC Act "focuses upon relief that is prospective, not retrospective" and noted "the words 'is violating' and 'is about to violate' (not 'has violated') setting forth when the Commission may request injunctive relief." *AMG* at 1348 (2021); *see also FTC v. Credit Bureau Ctr., LLC*, 937 F.3d 764, 774 (7th Cir. 2019) ("Section 13(b) serves a ... forward-facing role: enjoining ongoing and

imminent future violations."); *FTC v. Evans Prods. Co.*, 775 F.2d 1084, 1087 (9th Cir. 1985) (holding that Section 13(b) "contemplate[s] ongoing or future violations" and thus "an injunction will issue only if the wrongs are ongoing or likely to recur"). Section 13(b)'s focus on ongoing or imminent conduct requires the FTC to come forward with "some evidence that the defendant 'is' committing or 'is about to' commit a[] violation" of the FTC Act before it may obtain injunctive relief. *Shire* at 156.

The FTC has *no* evidence that any of the EDP Parties are engaging in "ongoing or imminent illegal conduct." *Shire* at 155. It is undisputed that the EDP Parties ceased all activities relevant to the FTC's claims in September 2013, nearly 8 years ago. Even if the EDP Parties' conduct were unlawful (which the EDP Parties dispute), conduct from nearly 8 years ago is not "ongoing or imminent illegal conduct" and cannot form the basis for injunctive relief under Section 13(b). And despite fully conducting discovery, including depositions of Defendants Wilson and Cleveland wherein the FTC had the opportunity to ask about the EDP Defendants' activities subsequent to exiting the business in September 2013, the FTC has adduced absolutely no evidence to "suggest that the violations alleged in the FTC's Complaint are likely to recur." *FTC v. Merchant Services Direct, LLC*, 2013 WL 4094394 at * 3 (E.D.Wa. August 13, 2013). The United States District Court for the

District of Columbia recently reached the same conclusion in *FTC v. Facebook, Inc.*, __ F.Supp. 3d __, 2021 WL 2643627 (D.D.C. June 28, 2021). In *Facebook*, the FTC filed an antitrust action against Facebook alleging, among other things, that Facebook's policy of refusing interoperability permissions for competing apps was unlawful. *Facebook* at \*2. In addition to other remedies, the FTC sought injunctive relief. *Id.* Facebook, however, had discontinued the practices in question in 2013. *Id.* In partially granting Facebook's motion to dismiss, the district court held that even if such conduct by Facebook were "actionable, it occurred nearly eight years ago, rendering an injunction under Section 13(b) unavailable as a matter of law." *Id.* at \*8. Similarly, the EDP Parties ceased operations in 2013. There is no – and cannot be any – evidence of a present or prospective violation by the EDP Parties. The FTC's request for injunctive relief should be rejected and summary judgment entered in favor of the EDP Parties.

## CONCLUSION

For the foregoing reasons, the EDP Parties respectfully request that the Court grant the Motion in its entirety.

This 10th day of August 2021,

/s/ Caroline M. Gieser
Caroline M. Gieser

cgieser@shb.com
SHOOK, HARDY & BACON LLP
1230 Peachtree St., Suite 1200
Atlanta, GA 30309
Tel: (470) 867-6000
Fax: (470) 867-6001

Michael L. Mallow
mmallow@shb.com
(Admitted *Pro Hac Vice*)
SHOOK, HARDY & BACON LLP
2049 Century Park East, Suite 3000
Los Angeles, CA 90067
Tel: (424) 285-8330
Fax: (424) 204-9093

*Attorneys for Defendants Dave Paul*
*Cleveland, William R. Wilson, and*
*EDebitPay, LLC*

16

**CERTIFICATION OF COMPLIANCE AS TO FONT SIZE**

The undersigned counsel certifies that the foregoing pleading has been prepared with 14 point Times New Roman font, which is one of the fonts and point selections approved by the Court in LR 5.1C, NDGa.

/s/ Caroline M. Gieser
Caroline M. Gieser

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that I have on this 10th day of August 2021, caused to be filed electronically via CM/ECF a true copy of the foregoing EDP PARTIES' MEMORANDUM OF LAW IN SUPPORT OF THEIR MOTION FOR SUMMARY JUDGMENT in the United States District Court for the Northern District of Georgia. Notice of this filing will be sent to counsel of record at the email addresses registered by them with the Court by operation of the Court's electronic filing system. Parties may access this filing through the Court's system.

This 10th day of August 2021,

/s/ Caroline M. Gieser
Caroline M. Gieser
cgieser@shb.com
SHOOK, HARDY & BACON LLP
1230 Peachtree St., Suite 1200
Atlanta, GA 30309
Tel: (470) 867-6000
Fax: (470) 867-6001

Michael L. Mallow
mmallow@shb.com
(Admitted *Pro Hac Vice*)
SHOOK, HARDY & BACON LLP
2049 Century Park East, Suite 3000
Los Angeles, CA 90067
Tel: (424) 285-8330
Fax: (424) 204-9093

*Attorneys for Defendants Dave Paul*
*Cleveland, William R. Wilson, and*
*EDebitPay, LLC*