**In UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION**

| | |
|---|---|
| **FEDERAL TRADE COMMISSION,** | |
| **Plaintiff,** | |
| **v.** | **Case No. 1:17-CV-03094-WMR** |
| **HORNBEAM SPECIAL SITUATIONS, LLC, et al.,** | |
| **Defendants.** | |

## DEFENDANTS iSTREAM FINANCIAL SERVICES, INC., KRIS AXBERG, AND RICHARD JOACHIM'S MOTION FOR SUMMARY JUDGMENT

Michael A. Caplan (Bar No. 601039)
Julia Blackburn Stone (Bar No. 200070)
CAPLAN | COBB
75 Fourteenth St., N.W.
Suite 2750
Atlanta, Georgia  30309
404.596.5610
404.596.5604 – fax
*mcaplan@caplancobb.com*
*jstone@caplancobb.com*

Leonard L. Gordon (*pro hac vice*)
VENABLE LLP
Rockefeller Center, 24th Floor
1270 Avenue of the Americas
New York, NY  10020
212.370.6252
212.307.5598 – fax
*llgordon@venable.com*

Mary M. Gardner (*pro hac vice*)
VENABLE LLP
600 Massachusetts Avenue, N.W.
Washington, DC  20001
202.344.4398
202.344.8300 – fax
*mmgardner@venable.com*

*Attorneys for iStream Defendants*

# **TABLE OF CONTENTS**

I.    INTRODUCTION AND RELIEF SOUGHT ................................................ 1

II.   UNDISPUTED MATERIAL FACTS ............................................................ 2

III.  ARGUMENT ................................................................................................ 3

     A.    Standard for Summary Judgment. ....................................................... 3

     B.    The iStream Defendants Are Entitled to Summary Judgment on FTC's Claim for Monetary Relief Under Section 13(b) of the FTC Act Because the FTC Acknowledged it Lacks the Statutory Authority to Request, and the Court Lacks the Statutory Authority to Order, Equitable Monetary Relief Under Section 13(b). ..................... 4

     C.    The iStream Defendants Are Entitled to Summary Judgment on FTC's Claim for Monetary Relief Under Section 19 of the FTC Act. ................................................................... 5

     D.    Even if the FTC Can Proceed With a Claim Under Section 19, It is Limited to iStream's Profits, Not Hornbeam's Revenue, And the FTC Has Failed to Offer a Profits-Based Calculation. ............................................................. 10

     E.    The iStream Defendants Are Entitled to Summary Judgment on FTC's Claim for Injunctive Relief Under Section 13(b) of the FTC Act. .......................................................... 15

IV.  CONCLUSION ........................................................................................... 18

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*AMG Cap. Mgmt., LLC v. FTC*,
    141 S. Ct. 1341 (2021)............................................................ 1, 4, 15

*Consumer Fin. Prot. Bureau v. Consumer First Legal Grp., LLC*,
    No. 19-3396, --- F.4th ---, 2021 WL 3123735 (7th Cir. July 23,
    2021)................................................................................................ 11

*CFTC v. Tayeh*,
    848 F. App'x 827 (11th Cir. 2021).................................................... 12

*FTC v. Cardiff*,
    No. ED CV-18-2104-DMG (C.D. Cal. June 29, 2021) ......................... 7

*FTC v. Lanier Law, LLC*,
    715 F. App'x 970 (11th Cir. 2017).................................................... 13

*FTC v. Shire ViroPharma, Inc.*,
    917 F.3d 147 (3d Cir. 2019) ............................................................ 15

*Gilliard v. Ga. Dep't of Corr.*,
    500 F. App'x 860 (11th Cir. 2012)...................................................... 3

*Liu v. SEC*,
    140 S. Ct. 1936 (2020)........................................................ 10, 11, 12

*Shoffner v. Qwest Commc'ns Corp.*,
    No. 4:01-CV-54, 2014 WL 3495045 (E.D. Tenn. June 23, 2014),
    *report and recommendation adopted*, No. 4:01-CV-54, 2014 WL
    3495175 (July 11, 2014) .................................................................... 7

**Statutes**

Section 13(b) of the FTC Act,
    15 U.S.C. § 53 ........................................................................ *passim*

Section 19 of the FTC Act,
  15 U.S.C. § 57b ........................................................................ *passim*

Securities Exchange Act of 1934,
  15 U.S.C. § 78a *et seq.* ...................................................... 11
**Other Authorities**
Local Rule 56.1 ................................................................... 1

Fed. R. Civ. P. 26(a) ........................................................ 7

Fed. R. Civ. P. 56 ........................................................ 1, 3, 15

16 C.F.R. § 310.3(b) ........................................................ 5

## I.    INTRODUCTION AND RELIEF SOUGHT

Pursuant to Federal Rule of Civil Procedure 56 and Local Rule 56.1, Defendants iStream Financial Services, Inc. ("iStream"), Kris Axberg, and Richard Joachim (the "iStream Defendants") hereby move for summary judgment holding that Plaintiff Federal Trade Commission ("FTC") is not entitled to equitable monetary or injunctive relief under either Section 13(b) or Section 19 of the FTC Act, 15 U.S.C. § 53 and 57b.

In *AMG Capital Management, LLC v. FTC*, 141 S. Ct. 1341 (2021), which was decided on April 22, 2021, the Supreme Court made clear that the FTC cannot recover monetary relief under Section 13(b) of the FTC Act, and that Section 13(b) applies only where a defendant is violating or about to violate the law.  There is no genuine dispute of any material facts that the iStream Defendants are not violating or about to violate the law.  Further, the FTC has failed to identify any relief that it is seeking under Section 19 of the FTC Act within the discovery period and improperly seeks to impose joint and several liability on the iStream Defendants. The iStream Defendants' Motion should be granted and the case against it dismissed.

## II.     UNDISPUTED MATERIAL FACTS

The iStream Defendants incorporate by reference their Statement of Undisputed Facts in Support of Motion for Summary Judgment as to Relief ("SUF"), filed herewith.

In sum, the FTC sought in this case a permanent injunction and consumer redress of $42,581,480 (minus refunds already made to consumers) from the iStream Defendants, jointly and severally, under Section 13(b) of the FTC Act. SUF ¶¶ 1, 2. It also pled unspecified relief under Section 19 of the FTC Act for assisting and facilitating claim under the Telemarketing Sales Rule ("TSR").  *Id.* ¶ 4.

The FTC has identified exactly the relief it seeks under Section 13(b)—to the penny—but failed to identify or discuss the relief it seeks under Section 19 in its Initial Disclosures (amended twice) or its responses to multiple interrogatory requests until approximately a week before the filing of this motion.  *Id.* ¶¶ 4–7.  As set forth in the iStream Defendants' Motion for Entry of Preclusion Order, the FTC's effort to address its failures to provide information regarding any relief it seeks for its Section 19 claim is untimely and should be precluded.

The iStream Defendants stopped processing payments for the EDP Defendants and Hornbeam Defendants in September 2013 and May 2016, respectively.  *Id.* ¶ 11.  The iStream Defendants also have not processed payments

for other companies in the "discount club" or "membership club" business or created Remotely Created Checks for any other entity since May 2016. *Id*. ¶ 12. The FTC has admitted it does not know whether iStream currently processes payments for any high-risk business, and the FTC took no discovery on iStream's business operations subsequent to the termination of the Hornbeam Defendants processing. *Id*. ¶¶ 14, 15.

## III.   ARGUMENT

### A.   Standard for Summary Judgment.

Under Federal Rule of Civil Procedure 56, the court shall grant summary judgment when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). To avoid summary judgment, the nonmoving party must make "enough of a showing that the jury could reasonably find for that party." *Gilliard v. Ga. Dep't of Corr.*, 500 F. App'x 860, 863 (11th Cir. 2012) (citation omitted).

**B.    The iStream Defendants Are Entitled to Summary Judgment on FTC's Claim for Monetary Relief Under Section 13(b) of the FTC Act Because the FTC Acknowledged it Lacks the Statutory Authority to Request, and the Court Lacks the Statutory Authority to Order, Equitable Monetary Relief Under Section 13(b).**

The FTC previously sought a monetary judgment of $42,581,480 (minus refunds made to customers) from the iStream Defendants, jointly and severally, under Section 13(b) of the FTC Act.  SUF ¶ 2.

On April 22, 2021, the United States Supreme Court unanimously and unequivocally held that the FTC is not entitled to monetary relief under Section 13(b) of the FTC Act.  *AMG Cap. Mgmt.*, 141 S. Ct. at 1347.  Over two months later, on July 2, 2021, the FTC acknowledged in a notice on the record that "it is not currently seeking equitable monetary relief under Section 13(b) of the FTC Act as to any defendant in this matter."  Notice of Decision in *AMG Capital Mgmt., LLC v. Federal Trade Commission* (Dkt. No. 360).  As a result, this Court should grant the iStream Defendants' motion for summary judgment, holding as a matter of law that the FTC lacks the ability to obtain monetary relief under Section 13(b) of the FTC Act.[1]

---

[1] Should there be another change in the law during the pendency of this case that impacts the FTC's claims for monetary relief, the iStream Defendants reserve their right to address any such change in law in their Reply brief or to seek leave of this Court to do so.

**C.     The iStream Defendants Are Entitled to Summary Judgment on FTC's Claim for Monetary Relief Under Section 19 of the FTC Act.**

The iStream Defendants also are entitled to summary judgment on the FTC's claim for monetary relief under Section 19 of the FTC Act because the FTC failed to identify—until a week ago—the monetary relief that it seeks under that provision.[2]

Most of the conduct challenged by the FTC in the Second Amended Complaint ("SAC") (Dkt. No. 223) concerns the marketing of discount clubs over the Internet.  SUF ¶ 2.  However, the FTC also challenges, in Counts V and VI of the SAC, the *telemarketing* of those clubs as being done in violation of the TSR.  *Id.* ¶ 4.[3]  In Count VII of the SAC, the FTC alleges that the iStream Defendants' provision of payment processing services to the discount clubs constituted assisting and facilitating in violation of the TSR, 16 C.F.R. § 310.3(b).  *Id.*

In its SAC, the FTC pled relief under both Section 13(b) and Section 19 of the FTC Act to redress injury to consumers resulting from these purported violations of

---

[2] On Monday, August 2, 2021, the FTC served its amended response to Interrogatory No. 85, Third Amended Initial Disclosures, and Third Amended Attachment A Witness List. Those belated discovery filings are the subject of the iStream Defendants' Motion for Entry of Preclusion Order. *See* Dkt. No. 374. Accordingly, the iStream Defendants incorporate by reference the arguments made in the iStream Defendants' Emergency Motion.

[3] It is undisputed that the Hornbeam Defendants ceased telemarketing in mid-2015. SUF ¶ 10.

the TSR, including the rescission or reformation of contracts and the refund of money. *Id.* ¶ 1.[4] Notably, the FTC does not make a demand for the payment of damages for which Section 19 expressly provides.

The FTC, however, failed to identify during the lengthy discovery period what (if any) relief it seeks for violations of the TSR or any basis for calculating such relief. *Id.* ¶ 4. Fact discovery closed on September 30, 2020, and expert discovery closed on January 8, 2021. (Dkt. No. 288). The FTC was well aware of the risk that the Supreme Court would end the FTC's *ultra vires* use of Section 13(b) for a lengthy period of time prior to the Supreme Court's decision in *AMG* in April 2021. Indeed, the FTC added its claim under Section 19 only after Judge Batten indicated that he was considering granting a motion to dismiss on Section 13(b) issues. (Dkt. No. 219). Neither the original Complaint nor the First Amended Complaint invoked Section 19. After amending its Complaint to invoke Section 19, the FTC took no steps to conduct or provide discovery on any relief it might seek under Section 19.

---

[4] Unlike Section 13(b) of the FTC Act, Section 19 of the FTC Act, 15 U.S.C. § 57b, expressly authorizes the Court to grant relief to redress injury to consumers resulting from violations of trade regulation rules (such as the TSR), including the refund on money and the payment of damages. But Section 19 expressly prohibits the imposition of any exemplary or punitive damages and is subject to a three-year statute of limitations.

The FTC's failure to identify the scope of monetary relief it seeks under Section 19 within the discovery period is fatal to that claim for relief.

It is axiomatic that one of the purposes of discovery is for the plaintiff to identify the amount and calculation of monetary relief it is seeking. Federal Rule of Civil Procedure 26(a) "imposes a duty to disclose 'a computation of *each category of damages* claimed by the disclosing party.'" Order re Remedies in Plaintiff's Motion for Summary Judgment and Jason and Eunjung Cardiff's Motion for Summary Judgment, *FTC v. Cardiff*, No. ED CV-18-2104-DMG (C.D. Cal. June 29, 2021) (Dkt. No. 627) (attached hereto as Exhibit 11), at 6 (quoting Fed. R. Civ. P. 26(a)(1)(A)(iii)). A "reasonable computation of damages is necessary to adequately plan and prepare for trial" and a defendant should not be expected to go into a trial "blind as to the damages claim of the plaintiff." *Shoffner v. Qwest Commc'ns Corp.*, No. 4:01-CV-54, 2014 WL 3495045, at *11 (E.D. Tenn. June 23, 2014), *report and recommendation adopted*, No. 4:01-CV-54, 2014 WL 3495175 (July 11, 2014). As detailed below, the FTC recognized this obligation in detailing the relief it sought under Section 13(b). The FTC previously identified the exact amount of monetary relief it sought under Section 13(b) to the penny—$42,581,480—and precisely how it calculated this figure. However, the FTC failed to do the same for the relief it seeks under Section 19.

7

In its description of "all statutes, codes, regulations, legal principles, standards and customs or usages, and illustrative case law which plaintiff contends are applicable to this action" in its Second Amended Initial Disclosures, the FTC, under its subsection "Injunctive and Equitable Monetary Relief," identifies Section 13(b)—and only Section 13(b)—as applicable to the relief it is seeking in this action. SUF ¶ 6.  Similarly, when asked to provide a "computation of any category of damages" claimed by the FTC, the FTC in its Initial Disclosures stated that it sought all discount club revenues (after returns) that were processed by iStream between November 2010 and May 2016 (estimated by the FTC to be $42,581,480).  *Id.* ¶ 2. Because only a subset of the transactions processed by iStream were conducted by telephone, and thus potentially subject to the TSR, this computation of damages clearly is limited to the FTC's claims under Section 13(b).  *Id.* ¶¶ 2, 4.

The defendants in this action also propounded multiple discovery requests seeking information about the FTC's theories and calculations of monetary relief, including:

- If the FTC contends that the total amount of equitable monetary relief at issue in this action is more than the aggregate net revenue generated by the Discount Clubs (i.e., the total sales of the Discount Clubs net of refunds paid to

consumers who paid for the Discount Clubs), identify the basis for your calculation.  SUF ¶ 2.

- Identify the basis for the FTC's computation of equitable monetary relief claimed as to each defendant.  *Id*.

- Describe all equitable monetary relief or damages that you seek in this matter against the iStream Defendants and provide the complete basis for each component of such relief or damages, including a computation of each category of relief or damages and a description of all those materials bearing on the nature and extent of each category of relief or damages.  *Id*.

In its response to each of these interrogatory requests, the FTC clearly and unmistakably set forth a theory and calculation of monetary relief from the iStream Defendants solely under Section 13(b): the amount of all payments collected by Defendants from consumers for Discount Clubs (less returns).  *Id.* ¶ 2.  In response to each of these requests, the FTC failed to provide the scope of relief it seeks for the purported TSR violations, including the identification of the transactions or consumer payments associated with telemarketing by the EDP and/or Hornbeam Defendants within the applicable statute of limitations.  *Id*. ¶ 4.

Additionally, the FTC's forensic accountant, Thomas P. Van Wazer, calculated consumer loss from each of the five groups of defendants (i.e., the EDP

Defendants, Hornbeam Defendants, iStream Defendants, Mark Ward, and Chet Andrews) without identifying Section 19 specific consumer losses.  SUF ¶ 16. Specifically, Mr. Van Wazer calculated consumer loss for *all* cleared Remotely Created Checks ("RCCs") transactions for the Identified Payees using information about *all* RCCs that iStream processed from 2010 to 2016.[5]  *Id.*  He made no attempt to delineate among the transactions in any way or to identify any telemarketing transactions.

The FTC's failure to identify any monetary relief that it seeks under Section 19 warrants granting the iStream Defendants' motion for summary judgment on that claim for relief.

### D. Even if the FTC Can Proceed With a Claim Under Section 19, It is Limited to iStream's Profits, Not Hornbeam's Revenue, And the FTC Has Failed to Offer a Profits-Based Calculation.

Even if the Court were to permit the FTC to proceed under Section 19 on its late-served damage calculation, the FTC's calculation is improper because it is not based on iStream's "net profits." *Liu v. SEC*, 140 S. Ct. 1936, 1946 (2020);

---

[5] The Identified Payees listed in the Van Wazer Declaration are as follows:  Platinum Online Group – SavingPays49; Platinum Online Group – SavingPays49 Redeposits; Platinum Online Group – SavingPays99; Platinum Online Group – SavingPays99 Redeposits; POG – SavingPays Membership Recurring; Premier Membership Clubs (SP); Premier Membership Clubs (SPRC); Premier Membership Clubs (SPRD); MoneyPlusSaver (MPS); MoneyPlusSaver (MSRD); Saving Makes Money (SMM); Saving Makes Money (SMRC); Saving Makes Money (SMRD).  SUF ¶ 16 at n.1.

*Consumer Fin. Prot. Bureau v. Consumer First Legal Grp., LLC*, No. 19-3396, ---
F.4th ---, 2021 WL 3123735, at \*10 (7th Cir. July 23, 2021).  Rather, the FTC
improperly seeks to hold the iStream Defendants jointly and severally liable for
money made by the Hornbeam Defendants.

Section 19 of the FTC Act authorizes courts to award equitable monetary
relief, such as "rescission or reformation of contracts, the refund of money or return
of property, [and] the payment of damages." 15 U.S.C. § 57b(b).  In *Liu*, the Supreme
Court held that "a disgorgement award that does not exceed a wrongdoer's net profits
and is awarded for victims is equitable relief permissible under [the Securities
Exchange Act of 1934]." 140 S. Ct. at 1940.  In reaching this conclusion, the
Supreme Court reasoned that "to avoid transforming an equitable remedy into a
punitive sanction, courts restricted the remedy to an individual wrongdoer's net
profits to be awarded to victims." *Id*. at 1942.

In the wake of *Liu*, the Seventh Circuit in *Consumer First Legal* reaffirmed
that *Liu*'s holding is not limited to disgorgement or to the Securities Act, but applies
to other equitable remedies, such as restitution, sought by other agencies including
the CFPB because "[*Liu*] purports to set forth a rule applicable to *all* categories of
equitable relief, including restitution." 2021 WL 3123735, at \*10 (emphasis added)
(reversing and remanding the district court's calculation of equitable relief as

contrary to the Supreme Court's directive in *Liu* where it was not limited to "net profits" but instead based on "net revenue"); *see also CFTC v. Tayeh*, 848 F. App'x 827, 829 (11th Cir. 2021) (finding *Liu* applies to the CFTC).

Here, the FTC seeks to impose on the iStream Defendants a monetary remedy not based on profits, income, or revenue that iStream received, but rather based on the value of the transactions iStream processed for a third party—the Hornbeam Defendants.  SUF ¶ 5 (seeking $2,314,221.65 which represents the "Discount Club [telemarketing] transactions from August 15, 2014 through May 2016" that iStream processed for the Hornbeam entities, net of returns).  Specifically, the FTC seeks to obtain a refund for the money consumers paid to the Hornbeam Defendants, ***not*** iStream, for the discount clubs when purchased through telemarketing.  *Id*.

The FTC's effort to recoup money from the iStream Defendants that iStream never received runs afoul of the Supreme Court's decision in *Liu*, wherein the Court noted that disgorgement may be sought against defendants only for the profits that they themselves have accrued.  140 S. Ct. at 1949.  Thus, imposing monetary relief based on money that the iStream Defendants never received "transform[s] any equitable profits-focused remedy into a penalty." 140 S. Ct. at 1949 ("impos[ing] disgorgement liability on a wrongdoer for benefits that accrue to his affiliates," is

contrary to "the rule to not impose joint liability in favor of holding defendants liable to account for such profits only as have accrued to themselves.") (citations omitted).

Moreover, the FTC's attempt to hold the iStream Defendants jointly and severally liable for refunding money—money that was paid to the Hornbeam Defendants, *not* iStream, Mr. Axberg or Mr. Joachim—disregards *Liu*. SUF ¶ 5. The Court in *Liu* ruled that joint and several liability is inconsistent with equitable relief in most instances, but acknowledged a narrow exception allowing joint and several disgorgement liability only in those situations where, "consistent with equitable principles," the defendants can "be found liable for profits as partners in wrongdoing." 140 S. Ct. at 1949 (noting that holding defendants jointly and severally liable for disgorgement where the defendants were not partners in wrongdoing would "transform any equitable profits-focused remedy into a penalty"). That narrow exception does not apply here.

Under the FTC Act, one entity can be held jointly and severally liable for the conduct of other entities where the structure, organization, and pattern of a business venture reveal a common enterprise or a maze of integrated business entities. *FTC v. Lanier Law, LLC*, 715 F. App'x 970, 979 (11th Cir. 2017). In determining if a common enterprise exists, courts consider whether the businesses "share office spaces and employees, commingle funds, coordinate advertising efforts, and operate

under common control." *Id.* Here, although the FTC did allege two different common enterprises (one among the EDP Defendants and one among the Hornbeam Defendants), the FTC did not include iStream, Mr. Axberg, or Mr. Joachim as members of either of those alleged common enterprises or partnerships.  SUF ¶ 9. Further, there is no evidence that the iStream Defendants shared office space and employees, commingled funds, coordinated advertising efforts or operated under common control with the Hornbeam Defendants.

Applying joint and several liability where the FTC has not alleged or proven the type of concerted wrongdoing necessary to sustain a finding of a common enterprise would transform the relief sought into an improper penalty under *Liu.*

Accordingly, any claim for equitable monetary relief under Section 19 should be limited to iStream's net profits from processing payments for sales made by telemarketing.  The FTC here has not sought discovery on or offered such a profit calculation.  Similarly, the FTC made no effort to conduct a profit-based calculation for Mr. Axberg or Mr. Joachim.  As a result, the iStream Defendants are entitled to summary judgment on that basis as well.

E.    **The iStream Defendants Are Entitled to Summary Judgment on FTC's Claim for Injunctive Relief Under Section 13(b) of the FTC Act.**

The FTC also cannot show that it is entitled to injunctive relief against the iStream Defendants, and, as a result, the iStream Defendants are entitled to summary judgment on all of the FTC's claims for injunctive relief.

To obtain injunctive relief under Section 13(b) of the FTC Act, the FTC must show that it has a reason to believe that the iStream Defendants *currently are violating* or *are about to violate* the law. *FTC v. Shire ViroPharma, Inc.*, 917 F.3d 147, 159 (3d Cir. 2019); *see* Order Denying Defendants' Motion to Dismiss (Dkt. No. 254).[6]  It is an "improper use of Section 13(b) to pursue long-past [conduct]," when a defendant "indisputably is not currently violating the law[.]" *Shire*, 917 F.3d at 161.

The Supreme Court now has adopted the reasoning used by the *Shire* court and confirmed that Section 13(b) requires an ongoing or imminent violation: "Taken as a whole, the provision focuses upon relief that is prospective, not retrospective. *Consider the words 'is violating' and 'is about to violate"* (not *'has violated')* setting

---

[6] Though the Court denied Defendants' Motion to Dismiss, the Court acknowledged that it "t[ook] the same approach" as *Shire*—determining whether the FTC "pled at least some facts to show that it had 'reason to believe' that defendants were 'about to violate' the law." Dkt. No. 254, at 7-8.  The FTC now faces a heightened Rule 56 standard, proving the facts underlying its pleadings.

*forth when the Commission may request injunctive relief.*"  *AMG Cap. Mgmt.*, *LLC*, 141 S. Ct. at 1348 (emphasis added).

Given the Supreme Court's approval of *Shire,* the FTC was required to adduce facts showing ongoing or imminent future law violations.  The mere incentive and opportunity to engage in violative conduct in the future is insufficient reason to believe the iStream Defendants are about to violate the law.  *Shire*, 917 F.3d at 160. As explained below, the FTC has not, and cannot, adduce any such facts.

The FTC concedes, as it must, that the iStream Defendants stopped processing payments for the EDP Defendants in September 2013 (SUF ¶ 6), and for the Hornbeam Defendants in May 2016 (more than a year before this lawsuit was filed). *Id*.  Instead of identifying any facts to support its blanket statement that it has reason to believe the iStream Defendants "are violating" or are "about to violate" any laws enforced by the FTC, the FTC relies on pure speculation and a mere opportunity to potentially violate the law.  *Id*. ¶ 13.  The law requires more.

In response to Interrogatory 20 of the iStream Defendants' First Set of Interrogatories, which requested a description of the *complete factual basis for all injunctive relief that the FTC seeks* against the iStream Defendants, the FTC states:

> While evidence received to date suggests that the iStream Defendants are no longer processing payments for Membership Services, LLC or the EDP/Hornbeam Defendants, the FTC does not know whether iStream Defendants have terminated their processing relationships with

16

other high risk merchants.  The iStream Defendants' business activities related to payment processing present opportunities for future violations of the FTC Act and Telemarketing Sales Rule requiring the imposition of appropriate injunctive relief to constrain the iStream Defendants' future ability to process payments for merchants engaged in unfair or deceptive practices. In addition, the FTC will seek appropriate scofflaw provisions to monitor compliance with any future order.

*See* SUF ¶ 14.  The FTC's concession that it "does not know" whether the iStream

Defendants process for high-risk merchants undermines its claim for equitable relief.

The FTC sought no discovery on this topic.

Further, when iStream stopped processing for the Hornbeam Defendants in

May 2016, it ended all payment processing for any businesses in the "discount club"

industry.  *Id*. ¶ 12.  Moreover, since May 2016, iStream no longer generates

Remotely Created Checks for any of the businesses for which it processes payment.

*Id*.

The FTC here cannot show ongoing or imminent future law violations:  it

cannot point to a shred of evidence relating to the iStream Defendants' business

activity since May 2016 in its discovery responses nor has it sought this information

in the discovery requests propounded to the defendants or in the numerous,

exhaustive depositions the FTC took of iStream employees.  It is for that reason that

the FTC's regulatory expert, Patti D. Joyner, testified that she did not—nor was she

asked to—provide any opinion regarding the iStream Defendants' current conduct

or business practices.  SUF ¶ 17.[7]  Simply put, there is no evidence that the iStream

Defendants are violating or about to violate the law or were doing so at the time the

complaint was filed.  As a result, the FTC cannot obtain any injunctive relief under

Section 13(b), and summary judgment is appropriate.

## IV.   CONCLUSION

For the foregoing reasons, the iStream Defendants are entitled to judgment as

a matter of law because the FTC is not entitled to any monetary or injunctive relief

under Section 13(b) or any monetary relief under Section 19.


Dated: August 10, 2021                    Respectfully submitted,

                                          /s/ Michael A. Caplan
                                          Michael A. Caplan (Bar No. 601039)
                                          Julia Blackburn Stone (Bar No. 200070)
                                          CAPLAN | COBB
                                          75 Fourteenth St. N.W.
                                          Suite 2750
                                          Atlanta, Georgia  30309
                                          404.596.5610
                                          404.596.5604 (facsimile)
                                          *mcaplan@caplancobb.com*
                                          *jstone@caplancobb.com*

---

[7] Similarly, the FTC relies on two fact witnesses—a former president of Kenney Bank and Trust from October 2011 through 2013 and a former vice president of compliance and chief risk officer of iStream between November 2012 and May 2013—in support of its claims against iStream.  Neither, however, has first-hand knowledge about iStream's operations since leaving Kenney Bank and Trust and iStream, respectively, in 2013.  SUF ¶¶ 18, 19.

18

Leonard L. Gordon (*pro hac vice*)
Rockefeller Center, 24th Floor
1270 Avenue of the Americas
New York, NY  10020
212.370.6252
212.370.5598 (facsimile)
*llgordon@venable.com*

Mary M. Gardner (*pro hac vice*)
VENABLE LLP
600 Massachusetts Avenue, N.W.
Washington, DC  20001
202.344.4398
202.344.8300 (facsimile)
*mmgardner@venable.com*

*Counsel for Defendants iStream Financial Services, Inc., Richard Joachim, and Kris Axberg*

## <u>LOCAL RULE 7.1(D) CERTIFICATION</u>

The undersigned counsel certifies that the foregoing document has been prepared with one of the font and point selections approved by the Court in LR 5.1(B).

Respectfully submitted this 10th day of August, 2021.

<u>/s/ Michael A. Caplan</u>
Michael A. Caplan (Bar No. 601039)
CAPLAN | COBB
75 Fourteenth St. N.W.
Suite 2750
Atlanta, Georgia  30309
404.596.5610
404.596.5604 (facsimile)
*mcaplan@caplancobb.com*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that I have on this 10th day of August, 2021, caused to be filed electronically via CM/ECF a true copy of the foregoing iStream Defendants' Motion For Summary Judgment in the United States District Court for the Northern District of Georgia.  Notice of this filing will be sent to counsel of record at the email addresses registered by them with the Court by operation of the Court's electronic filing system.  Parties may access this filing through the Court's system.

/s/ Michael A. Caplan
Michael A. Caplan (Bar No. 601039)
CAPLAN | COBB
75 Fourteenth St. N.W.
Suite 2750
Atlanta, Georgia  30309
404.596.5610
404.596.5604 (facsimile)
*mcaplan@caplancobb.com*
