# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF GEORGIA
### ATLANTA DIVISION

| | | |
|---|---|---|
| FEDERAL TRADE COMMISSION | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | CASE NO. 1:17-cv-03094-WMR |
| v. | ) | |
| | ) | |
| HORNBEAM SPECIAL | ) | |
| SITUATIONS, LLC; et al. | ) | |
| | ) | |
| Defendants. | ) | |

## PLAINTIFF FEDERAL TRADE COMMISSION'S OPPOSITION TO DEFENDANT PATRICIA BRANDMEIER ROBINSON AS EXECUTOR OF THE ESTATE OF JERRY L. ROBINSON'S MOTION FOR SUMMARY JUDGMENT

Plaintiff the Federal Trade Commission ("Plaintiff" or "FTC") opposes

Defendant Patricia Brandmeier Robinson as Executor of The Estate Of Jerry L.

Robinson's ("Robinson Estate") Motion For Summary Judgment. [Dkt. 387].[1]

Three of the Robinson Estate's arguments require no response because they relate

---

[1] While the Robinson Estate styles its Motion as a motion for summary judgment on all counts in the Second Amended Complaint, it offers no arguments relating to liability and, in reality, seeks only partial summary judgment on the relief available to the FTC if it prevails in this action. [Dkt. 387, *passim*].

1

to relief *the FTC is not seeking* against it.[2]  The fourth argument fares no better,

misconstruing the facts and offering no legal authority or basis.

## I.   THE IMPACT OF *AMG CAP. MGMT.* ON THIS CASE

In April 2021, the Supreme Court's decision in *AMG Cap. Mgmt., LLC v.
FTC*, 593 U.S. --, 141 S. Ct. 1341 (2021) upended decades of Eleventh Circuit

precedent. At multiple times over the course of the last year, including in

conjunction with the Defendants' Motion to Stay proceedings, [Dkt. 295 at 2 (filed

by iStream Defendants but expressly joined by all non-defaulted Defendants,

including the Robinson Estate)][3], and the January 2021 status conference, the

parties have discussed the possible impact of the Supreme Court's ruling.

_____

[2] As the FTC conceded in its Supplemental Notice regarding the Supreme Court's
decision in *AMG Cap. Mgmt., LLC v. FTC*, 593 U.S. --, 141 S. Ct. 1341 (2021), it
can no longer seek equitable monetary relief under Section 13(b) of the FTC Act.
[Dkt. 372 at 2]. Further, as confirmed in its Motion for Summary Judgment against
the Robinson Estate [Dkt. 378-1], the FTC is seeking neither relief under
subsection (a)(2) of Section 19 of the FTC Act nor injunctive conduct relief against
the Robinson Estate. [Dkt. 378-1 at 34-36; *see also* Dkt. 239 at 14 (conceding that
the FTC cannot seek injunctive conduct relief against the Estates but noting that
the deaths of Jerry Robinson and Chet Andrews did not preclude the award of
equitable monetary relief); Dkt. 108 (same); Dkt. 132 (Order granting substitution
of Robinson Estate)]. Because the FTC is not seeking these forms of relief against
the Robinson Estate, the Estate's Motion on these issues should be denied as moot.
[3] Citations to parties' briefs reflect internal document pagination rather than PDF
document pagination.

In April 2021, the Supreme Court issued its decision in *AMG Cap. Mgmt.*, ruling the FTC cannot obtain equitable monetary relief under Section 13(b) of the FTC Act. *AMG Cap. Mgmt.*, 141 S.Ct. at 1352. The FTC immediately filed the decision with the Court and, subsequently, filed an affirmative notice conceding that the FTC could no longer seek equitable monetary relief under Section 13(b) as to any defendant in this action. [Dkt. 360; Dkt. 372]. In order to save all parties' time and resources, the FTC then affirmatively amended its Initial Disclosures and its response to a 30(b)(6) Interrogatory, which had provided the basis for the FTC's calculation of equitable monetary relief sought, to conform the *total* amount of equitable monetary relief claimed to *exclude* all equitable monetary relief available solely under Section 13(b). [Ex. A (FTC Third Am. Init. Discl.) at 17-18; Ex. B (FTC Am. Resp. Irog. No. 85) at 17-22]. As explained in that amended Interrogatory response, the FTC required no new or different evidence to accomplish this task. Specifically, *all* of the necessary information was produced to the FTC *by iStream* in the *exact* spreadsheets the FTC had *already identified* as the basis for its claims of equitable monetary relief in this matter. [Ex. B (FTC Am. Resp. Irog. No. 85) at 7-8, 13-14, 16-17, 19, 26, 28-29]. With regard to the Robinson Estate, the FTC simply *removed* the amounts relating to any transactions

3

that pre-date August 15, 2014, in accordance with the three-year statute of

limitations applicable to Section 19, resulting in a *decrease* in the total amount of

equitable monetary relief sought by the FTC against the Robinson Estate from

more than $16 million to just over $9 million. [*See* Ex. B (FTC Am. Resp. Irog.

No. 85) at 16-17, 20-22].

## II.    THE ROBINSON ESTATE'S ATTEMPT TO REWRITE HISTORY IN THE WAKE OF THE SUPREME COURT'S *AMG* DECISION CANNOT PREVAIL

In the wake of the *AMG* decision, the Robinson Estate is now trying to

rewrite the history of this case to suggest the FTC, despite providing complete

information on the total amount of equitable monetary relief sought in this case and

responding fully to all Defendants' discovery requests, somehow anticipatorily

waived its claims to equitable monetary relief under Section 19 of the FTC Act – a

statute that was not impacted by the *AMG* decision. The Robinson Estate is wrong.

### A.    *AMG Cap. Mgmt.* Did Not Impact Section 19 of the FTC Act.

First, the Robinson Estate seems to argue the Supreme Court's decision in

*AMG Cap. Mgmt.* permits the FTC to seek equitable monetary relief under Section

19 of the FTC Act "only . . . after first obtaining a final cease and desist order."

[Dkt. 387-1 at 7]. Of course, in *AMG Cap. Mgmt.*, the Supreme Court was not

considering any legal questions regarding Section 19 and, as the Robinson Estate

4

admits, the Court's references to Section 19, made in the course of its decision regarding equitable monetary relief under Section 13(b), expressly related to subsection (a)(2) of Section 19. *AMG Cap. Mgmt.*, 141 S.Ct. at 1349-52; Dkt. 387-1 at 7-9.

In this action, however, the FTC has *never* sought relief under Section 19(a)(2) of the FTC Act, 15 U.S.C. § 57b(a)(2). Instead, the FTC's claims have always been premised on subsection (a)(1). Unlike Section (a)(2), this section empowers the FTC to commence a civil action in federal court directly against a person or entity that violates a rule subject to the subchapter. [15 U.S.C. § 57b(a)(1); Dkt. 223 (Second Amended Complaint) at 174 ("Pursuant to Section 5 of ROSCA, 15 U.S.C. § 8404, a violation of ROSCA is a violation of a rule promulgated under Section 18 of the FTC Act, 15 U.S.C. § 57a."); *id.* at 177-78 ("Pursuant to Section 3(c) of the Telemarketing Act, 15 U.S.C. § 6102(c), and Section 18(d)(3) of the FTC Act, 15 U.S.C. § 57a(d)(3), a violation of the TSR constitutes an unfair or deceptive act or practice in or affecting commerce, in violation of Section 5(a) of the FTC Act, 15 U.S.C. § 45(a), and shall be treated as a violation of a rule promulgated under Section 18, 15 U.S.C. § 57a."); *id.* at 181-82 (noting the Court's power to grant relief and seeking relief, including equitable

5

monetary relief, under Section 19 of the FTC Act for violations of the TSR and ROSCA)].

In fact, the Robinson Estate expressly recognized that the FTC had brought claims under subsection (a)(1) of Section 19 – and that such claims were proper without a previous cease and desist order – in its November 2018 motion to dismiss the Second Amended Complaint. [Dkt. 227 at 5-6 (recognizing that the FTC's SAC "allege[s] violations of ROSCA (Count IV) and the TSR (Counts V and VI)"]. Therefore, the Robinson Estate's arguments that the FTC has failed to comply with the prerequisites of subsection (a)(2) of Section 19 of the FTC Act are inapposite.

## B.     The Robinson Estate Fails to Offer Any Legal Authority or Basis for Its Argument.

In the remainder of its Section 19 argument, the Robinson Estate, much like its co-defendants, offers no reasoned legal basis or authority. Indeed, it does not cite a single legal authority, [Dkt. 387-1 at 9-10], leaving it to the Court and the FTC to guess the legal argument underlying its Motion. Such a tactic is improper and, by itself, justifies denying the Motion. At summary judgment, it is the moving party's burden to establish that there are no genuine issues of material fact and that it is entitled to judgment *as a matter of law. See Mazzeo v. Color Resols. Int'l,*

6

*LLC*, 746 F.3d 1264, 1266 (11th Cir. 2014) (holding the party moving for summary judgment has the burden of demonstrating that there are no genuine issues as to any material fact and that it is entitled to judgment as a matter of law). The Robinson Estate has wholly failed to satisfy this burden.

      **C.**    **The Robinson Estate's Motion Fails on the Facts and the Law.**

      Taking a generous view of the Motion, it appears the Estate is asserting it is entitled to summary judgment on the FTC's claims for equitable monetary relief under Section 19 of the FTC Act because the FTC did not, prior to the Supreme Court's ruling in *AMG Cap. Mgmt.*, provide it with a calculation of the exact amount of equitable monetary relief the FTC would be seeking, if such relief were unavailable under Section 13(b). [Dkt. 387-1 at 9-10]. This is the same argument raised by the iStream Defendants in their Motion [Dkt. 389 at 5-10], albeit with even less explication. Like the iStream Defendants, the Robinson Estate fails to establish it is entitled to judgment as a matter of law on this basis.

      **1.**    **The Robinson Estate has not sought to preclude any evidence.**

      Like the iStream Defendants' Motion, the Robinson Estate's Motion is wholly premised on the assumption that the Court will preclude the FTC's Third Amended Initial Disclosures and amended response to Interrogatory No. 85 from

7

Defendants' Joint 30(b)(6) Interrogatories. In alluding to this argument, the Robinson Estate does not reference or discuss either document, both of which provide the specific calculation of the exact amount of equitable monetary relief sought by the FTC after conforming its request to the ruling in *AMG Cap. Mgmt.* [Ex. A (FTC Third Am. Init. Discl.) at 17-18; Ex. B (FTC Am. Resp. Irog. No. 85) at 17-22; *see also* Dkt. 387-1 at 9-10]. However, unlike prior motions filed in this case, including one discussed *infra*, the Robinson Estate did not join the iStream Defendants' Motion for Preclusion Order. [Dkt. 374]. Moreover, the Robinson Estate offers no arguments in this Motion seeking to preclude the FTC's amended disclosure and response regarding the total amount of equitable monetary relief sought in this matter [Dkt. 387-1, *passim*]. Thus, because the FTC's Third Initial Disclosures and amended response to Interrogatory No. 85 expressly provide the exact piece of information the Robinson Estate claims to be seeking, this Motion should be denied.[4] *See DePaola v. Nissan North Am., Inc.*, 2008 WL 808615 at *3

---

[4] The Robinson Estate's purported dissatisfaction with the FTC's Initial Disclosures and amendments thereto stand in stark contrast to Jerry L. Robinson's and the Robinson Estate's failure to serve any Initial Disclosures at all. *See generally* Docket for *FTC v. Hornbeam Special Situations, LLC, et al.*, Civ. No. 1:17cv03094-WMR (N.D. Ga.) (showing no Certificates of Service relating to Initial Disclosures served by Jerry L. Robinson or the Estate of Jerry L. Robinson). Thus, the benchmark the Estate seeks to apply to the FTC is apparently a one-sided standard.

(M.D. Ala. Mar. 24, 2008) (finding supplemental damages disclosure "satisfied Rule 37" and precluded the argument that plaintiff's evidence of damages should be excluded for failure to comply with Rule 26(a)).

The Robinson Estate does not offer any argument on how it would be entitled to summary judgment if those materials are considered, as they should be. Thus, if the Court does not grant the iStream Defendants' Preclusion Motion in full and extend the relief to Defendants who have not joined that motion, this Motion must also be denied. Even if the Court were to grant the iStream Defendants' Preclusion Motion, which, for the reasons detailed in the FTC's Opposition, it should not, the Robinson Estate's Motion still fails.

## 2. Even Under the Robinson Estate's Hypothetical Scenario, Its Motion Fails.

Even if the Court were to disregard the FTC's Third Amended Initial Disclosures and amended response to Interrogatory No. 85 in ruling on the Robinson Estate's Motion, the Robinson Estate still fails to offer any basis for summary judgment.

The Robinson Estate appears to offer two arguments in its Motion:  (1) setting aside (for unstated reasons) the FTC's Third Amended Initial Disclosures and amended response to Interrogatory No. 85, the FTC did not provide to the

Robinson Estate a precise calculation of the exact amount of equitable monetary

relief sought under Section 19 of the FTC Act [Dkt. 387-1 at 9-10]; and (2) the

FTC abandoned or waived any claims to equitable monetary relief under Section

19 [*id.* at 10 (arguing the FTC's responses to Interrogatories addressed only

Section 13(b) equitable monetary relief)]. Neither argument is correct.

>        a.       The Robinson Estate offers no basis for precluding the
>                 FTC from asserting claims for equitable monetary relief.

The Robinson Estate appears to argue the FTC should be precluded from

seeking any equitable monetary relief. The Robinson Estate offers no legal

authority for this argument, and it is not supportable.

The iStream Defendants, in their separate motion making a similar assertion,

vaguely referenced two cases, which the FTC could only infer was their legal

authority for this argument. [Dkt. 389 at 7 (referencing two out-of-circuit district

court cases for the principle that the plaintiff has a duty to disclose computations of

each category of damages sought)]. As discussed in the FTC's Opposition to the

iStream Defendants' Motion, neither of those cases support such a *per se* rule.

Instead, in both cases, the courts ultimately granted summary judgment on the

relief at issue, not as a sanction against the plaintiff for failing to provide the

"computation" at issue, but because the plaintiff failed to produce admissible

evidence in support of its claims to relief. *See FTC v. Cardiff*, 2021 WL 3616071, at *6 (C.D. Cal. Jun. 29, 2021); *Shoffner v. Qwest Comms. Corp.*, 2014 WL 3495045, at *11 (E.D. Tenn. Jun. 23, 2014).

> b. <u>The FTC has identified more than sufficient evidence in support of its claims for equitable monetary relief.</u>

Tellingly, the Robinson Estate does not even attempt to address the evidence supporting the FTC's claims for equitable monetary relief. Here, the same transactional data iStream produced to the FTC in 2016, that the FTC authenticated in iStream's 30(b)(6) deposition, and that the FTC has always identified as the evidentiary support for its equitable monetary relief calculations, would *still* be admissible and more than sufficient to support the FTC's request for equitable monetary relief in this action.

In its initial response to Interrogatory No. 85, the FTC expressly identified the "detailed underlying data produced by iStream at FTC00552767-73" as the evidentiary basis for its computation of equitable monetary relief. [Dkt. 387-3 at (FTC Resp. Irog No. 85) at 126-29].[5]  In its amended response to Interrogatory No.

---

[5] The FTC also pointed to other data produced by iStream, as well as a summary declaration from Thomas Van Wazer, computing the totals for equitable monetary relief for each defendant or defendant group based on that data. [Dkt. 387-3 (FTC Resp. Irog No. 85) at 121-137; PX 1186, T. Van Wazer Decl.]. As the summary declaration is merely a §1001 summary of the underlying data and is not essential

85, the FTC confirmed it was modifying its calculations of total equitable

monetary relief by using the exact same data to remove transactions that would

have been recoverable solely under Section 13(b). [Ex. B (FTC Am. Resp. Irog.

No. 85) at 17-22].[6] Those spreadsheets include specific, transaction-level details

for each RCC processed by iStream on behalf of the Discount Club scheme,

including:  (1) the date of the transaction; (2) the amount of the transaction; (3) the

payee for the RCC; (4) the consumer's name on the RCC; (5) whether the

transaction cleared or was rejected by the consumer's bank, and, if returned, the

reason for that return; and (6) information that was printed on the face of the RCC

and referred to by Defendants as the "order details," including either an IP address

to reflect a Discount Club enrollment via the Internet or a telephone number to

reflect a Discount Club enrollment via telemarketing. [PX 260 (also PX 1164) at 4

(identifying iStream Interrogatory 4(g) spreadsheets as providing transaction-level

data for Discount Club transactions); Ex. C (sample of columns and data provided

by iStream in response to Interrogatory 4(g)); Dkt. 396 at 13 (iStream Preclusion

_____

to its claim for relief but a convenience to the parties and the Court, the FTC will
not address it separately here.

[6] The FTC also provided to the Court and the Defendants a supplemental summary
declaration from Mr. Van Wazer, again providing a §1001 summary of the
underlying data. [PX 1370, T. Van Wazer Supp. Decl.].

Motion Reply acknowledging that spreadsheet sample in Ex. C "reflect[s] an IP address or telephone number associated with the transaction"); *see also* PX 1383 (sample of redacted RCCs showing memo fields with IP addresses and phone numbers)]. That data includes *all* of the information necessary to subdivide the computation of equitable monetary relief by party, by date, or by type of transaction.

As explained by the FTC's summary declarant, identifying transactions recoverable against the Robinson Estate under Section 19 using that data requires only a few, basic steps:  (1) identifying Discount Club transactions based on the identified payees; (2) removing Discount Club transactions that were returned by consumers' banks; and (3) excluding Discount Club transactions dated before August 15, 2014. [PX 1370, T. Van Wazer Supp. Decl. ¶¶ 4-12].[7] The first two

---

[7] The Robinson Estate suggests that more would be required, arguing that "only a *portion of the transactions at issue* were conducted by telephone (subject to the TSR) or by internet with a negative consent option (subject to ROSCA)." [*Id.*]. That is untrue. *Every single transaction* in this case was either conducted by telephone or by internet. There is no evidence that any consumer was enrolled in the Discount Club by any other means. As a result, every transaction that occurred from August 15, 2014 forward is subject to *either* the TSR or ROSCA and is, therefore, a transaction "at issue" in the FTC's request for equitable monetary relief under Section 19 against the Robinson Estate. In other words, separating those transactions into telemarketing versus online transactions has no impact whatsoever on the calculation of total equitable monetary relief sought against the Robinson Estate.

steps simply duplicate the now-abandoned calculations for relief under both

Section 13(b) and Section 19. The third simply excludes clearly identified

transactions that occurred before a certain date to account for Section 19's statute

of limitations. The final step simply adds the amounts of the identified

transactions. [*Id.* ¶¶ 9-12]. In other words, these are basic steps to sort and compute

the transactional data based on objective criteria.

　　In addition, the FTC has confirmed, through depositions, the authenticity of

the data iStream produced during the FTC's pre-suit investigation, including all

data cited by the FTC in support of its claims for equitable monetary relief.

[iStream 30(b)(6) Dep., J. Erickson, 133:9-134:13; PX 260 (also PX 1164)].

Indeed, authenticating that data was an express topic of the iStream 30(b)(6)

deposition. [PX 254 at 10].[8] The Robinson Estate has not challenged the

---

[8] While not necessary in order to identify the amount of equitable monetary relief
sought against the Robinson Estate under Section 19, the FTC also confirmed that
the iStream data showed exactly the information it appeared to, including
information shown on the face of each RCC that Defendants used to separate
online and telemarketing transactions. [C. Andrews Dep., 62:11-63:3 (confirming
that Defendants printed information relating to the Discount Club enrollment on
the RCCs *and* that such information was maintained by iStream); V. Murillo Dep.
72:10-25 (testifying that the "redacted computer IP" shown in the memo field of an
RCC exhibit "shows that it came through online"); PX 50 (email authenticated by
Mr. Andrews from November 2012 explaining to Fred Joachim that iStream used
RCCs for Discount Club transactions "so that we can provide transaction detail on
the check copy to include customer service phone number, IP address, transaction

authenticity, admissibility, or sufficiency of this data, which iStream confirmed

was accurate, taken from their business systems, and maintained in the ordinary

course of their business. The Estate does not deny the FTC identified that

transactional data in response to Defendants' Joint 30(b)(6) Interrogatories.

Moreover, the Robinson Estate has not argued this data is *in any way* insufficient

to support the FTC's calculations of equitable monetary relief in this matter.[9]

---

date, purchase description, etc."); *see also* PX 43 at 96 (QC Manual to iStream and
WestSide Bank); PX 112 at 6 (presentation to WestSide Bank); PX 185 at 32
(Hornbeam training material highlighting that RCCs, for "phone order clarity,"
include "the phone number where the order was authorized from" and, for "online
order clarity," include "the IP address where the order was authorized from"); PX
188 at 36 (same); PX 192 at 10-11, 16-17 (same); PX 193 at 10, 19-20, 29 (same);
PX 194 at 2 (same); PX 200 at 6, 7, 9 (Hornbeam responses to AG complaints
highlighting that the RCC included "proof of authorization details" including IP
address for "online order"); PX 203 at 10 (Hornbeam response to AG complaint
highlighting that the RCC included "proof of authorization details" including the
"phone number" for "phone order"); PX 207 at 5, 8; PX 210 at 3-4; PX 220 at 2;
PX 223 at 3-8; PX 238 at 2-4; PX 242 at 2-3; PX 637 at 3-4, 6; PX 638 at 3-6; PX
639 at 3, 5, 7; PX 665 at 2-3; PX 666 at 2-4; PX 939 at 3].
[9] Significantly, the iStream Defendants did not address this data or seek to preclude
it as part of their Preclusion Motion. Thus, even if the Court were to grant the
iStream Defendants' Preclusion Motion and extend it to all Defendants, which it
should not for the reasons detailed in the FTC's Opposition to that Motion, the
evidence in the record is more than sufficient to support the FTC's claims for
equitable monetary relief.

3. **The Robinson Estate offers no legitimate basis for precluding the FTC's evidence in support of equitable monetary relief.**

Because the FTC has identified the evidence supporting its claims for equitable monetary relief and the Robinson Estate has not challenged the authenticity or sufficiency of that evidence, the Estate cannot prevail in its Motion. In fact, the Estate does not even offer a legal argument to exclude that evidence from consideration. *See In re Egidi*, 571 F.3d 1156, 1163 (11th Cir. 2009) (arguments not included in initial brief are waived); *see also Super98, LLC v. Delta Air Lines, Inc.*, 309 F. Supp. 3d 1368, 1381-82 (N.D. Ga. 2018); *Stanton v. NCR Pension Plan*, 2021 WL 1170109, at *2 (N.D. Ga. Mar. 29, 2021); *Silvey v. City of Lookout Mountain, Ga.*, 2018 WL 861976, at *2 n.1 (N.D. Ga. Jun. 8, 2018). However, even if the Court were to consider such a request without a specified legal basis, the Robinson Estate cannot prevail.

Fed. R. Civ. P. 54(c) provides guidance on this issue and requires that, except for default judgments, in final judgment the Court "should grant the relief to which each party is entitled, even if the party has not demanded that relief in its pleadings." The Eleventh Circuit broadly applies this rule. For example, in *Lanier Constr., Inc. v. Carbone Prop. of Mobile, LLC*, 253 F. App'x 861 (11th Cir. 2007), relying on Rule 54(c), the court affirmed a trial court's decision to award relief

16

under the Miller Act, despite the fact that the court had previously denied a request for leave to amend the complaint to assert such claims. *Id.* at 863-64 (citing *Steger v. Gen. Elec. Co.*, 318 F.3d 1066, 1077 (11th Cir. 2003)). As the court made clear, Rule 54(c) provides "[a] party may be awarded the damages established by the pleadings or the facts proven at trial . . . unless such damages are foisted upon the parties by the court, or unless the failure to demand such relief prejudiced the opposing party." *Sapp v. Renfroe*, 511 F.2d 172, 176 n.3 (5th Cir. 1975); *see also Hudson v. Chertoff*, 484 F. Supp. 2d 1268, 1270 (S.D. Fla. 2007) (collecting cases and finding "prejudice" requires a showing of improper and substantial prejudice). *Cf. FTC v. Credit Bureau Center, LLC*, 2021 WL 4146884, at *6 (N.D. Ill. Sept. 13, 2021)

When faced with motions to preclude evidence supporting claims for relief and related summary judgment motions, courts consider such factors as: (1) whether the defendant lacked notice of the claims and/or the evidence; (2) whether the defendant would suffer improper and uncurable prejudice if the evidence were allowed; and (3) whether the plaintiff defied court orders or otherwise refused to provide requested discovery. *See*, *e.g.*, *Dick v. Pilot Travel Centers, LLC*, 2018 WL 3416739, at *1 (N.D. Fla. Apr. 9, 2018) (finding preclusion of claim

*potentially* appropriate where plaintiff *repeatedly* failed to provide computations of categories of damages and failed to make available "any documents on which such computations could be based"); *Orr v. Angel Emer. Med. Servs., LLC*, 2015 WL 13774252, at *4 (N.D. Ga. Oct. 20, 2015) (rejecting motion to exclude supplemental damage calculations where Defendants did not suffer "any real prejudice"); *Select Export Corp. v. Richeson*, 2011 WL 13227934, at *3 (S.D. Fla. Apr. 29, 2011) (rejecting exclusion of damages claim, finding that, where defendants possessed the documents to support the plaintiff's claims, "there is little harm, if any, to Defendants by Plaintiff's failure to disclose its calculations and supporting evidence for damages based on defendant's profits"); *Bowers v. Am. Heart Ass'n, Inc.*, 2008 WL 11407360, at * 3 (N.D. Ga. Dec. 2, 2008) (rejecting motion in limine to exclude damages evidence where court found "no bad faith on the part of Plaintiff in not disclosing the damages computations earlier and no prejudice to Defendants is evident as a result of the untimely disclosure"); *DePaola*, 2008 WL 808615, at *3-4 (discounting claims of "harm" from late damages disclosure in Rule 37 motion where defendants did not file a motion to extend discovery to respond to the disclosures, move to compel further disclosures, or raise any deficiencies with the supplemental disclosures); *Capuano v. Cons.*

18

*Graphics Inc.*, 2007 WL 2688421, at *3 (N.D. Ill. Sep. 7, 2007) (denying motion to exclude defendants' damages evidence where there was no prejudice because calculation was based on testimony and documents in plaintiff's possession and plaintiff chose not to depose witness disclosed as individual with relevant knowledge); *see also Seubert v. FFE Transp. Servs. Inc.*, 2013 WL 328674, at * 4-5 (E.D. Mo. Jan. 29, 2013) (rejecting motion for summary judgment based on preclusion of evidence argument, noting that there was not a new theory of damages, the plaintiff did not fail to state the claim or to provide "information necessary to calculate lost profits," and there was evidence in the record to support claim).

Here, the Robinson Estate does not assert that any of these factors are present, and, thereby, waives any such arguments. Moreover, Defendants' prior statements to the Court and the record itself both refute any assertion that: the Robinson Estate lacked sufficient notice of the claims and evidence; it would suffer any undue prejudice from consideration of the evidence; or the FTC refused to provide requested discovery on equitable monetary relief.

      a.    <u>Defendants have repeatedly acknowledged the FTC's</u>
<u>claims under Section 19 to the Court without asserting</u>
<u>lack of notice or prejudice.</u>

The Robinson Estate cannot – and does not – even suggest it was unaware of the FTC's claims for equitable monetary relief under Section 19 or that it actually believed the FTC had abandoned such claims. *See Credit Bureau Cntr.*, 2021 WL 4146884, at \*6, 9 (rejecting argument that FTC forfeited claims to relief under Section 19 by not separately identifying the statute in its complaint, where FTC sought relief under the FTC Act for ROSCA violations and, at the time, "it was the law in this circuit (and throughout much of the country) that section 13(b) was a permissible route to restitution"); *id* at \*9 (recognizing that *AMG Cap. Mgmt.* resulted in a change of "overwhelming and longstanding precedent").

In fact, the Robinson Estate has always known that the FTC was seeking relief against it under Section 19 of the FTC Act. Specifically, the Estate recognized in its November 2018 motion to dismiss [Dkt. 227 at 5-6] that the operative Second Amended Complaint brought claims against it for violations of ROSCA and the TSR, seeking relief pursuant to subsection (a)(1) of Section 19 of the FTC Act [Dkt. 223 (SAC) at 172-80]. The Estate was also aware that a three-year statute of limitations applied to those Section 19 claims. [Dkt. 227 at 4-6]. Moreover, as discussed in the FTC's Opposition to the iStream Defendants'

Motion for Preclusion Order, [Dkt. 393 at 4-5], in multiple filings and hearings over the course of the last year, the parties have discussed the possibility that the *AMG Cap. Mgmt.* decision could affect Section 13(b) equitable monetary relief, but that such a decision would not eliminate all of the FTC's claims for equitable monetary relief in this action.

In July 2020, just eleven days after the Supreme Court granted *certiorari* in the *AMG Cap. Mgmt.* decision [Dkt. 295 at 6], the iStream Defendants – joined by all other, non-defaulted Defendants, including the Robinson Estate [*id.* at 2] – moved to stay this matter pending a Supreme Court decision in two Consolidated Appeals, including *AMG Cap. Mgmt.* [Dkt. 295]. In that motion, Defendants explicitly acknowledged the FTC's claims for equitable monetary relief under Section 19 of the FTC Act. [*Id.* at 2-3]. On behalf of all Defendants, the iStream Defendants discussed the scope of equitable monetary relief under Section 19, as well as their need to prepare "disgorgement calculations," including, as one scenario, where no relief was permitted under Section 13(b). [*Id.* at 5-6, 10].

In denying that Stay Motion, the Court found that "[t]he FTC seeks multiple forms of relief, including equitable monetary relief and permanent conduct injunctions, under Sections 13(b) and 19 of the FTC Act, 15 U.S.C. § 53(b) and

21

57b, Section 5 of ROSCA, 15 U.S.C. § 8404, Section 6(b) of the Telemarketing Act, 15 U.S.C. § 6105(b), and the Court's own equitable powers." [Dkt. 311 at 2; *see also id.* at 3; Dkt. 298 at 7-8]. The Court further held that "[t]he future ruling [in the Consolidated Appeals] will not affect existing law on . . . the availability of monetary relief under Section 19." [*Id.* at 6-7].

Importantly, in May of this year, the Robinson Estate, along with the other Defendants, confirmed its understanding that the Supreme Court's decision in *AMG Cap. Mgmt.* did not extinguish all of the FTC's claims for equitable monetary relief and that such claims continued to exist against it. Specifically, on May 3, 2021, Michael Caplan, counsel for the iStream Defendants and the Estate of Chet Andrews, emailed the Court "on behalf of all the defendants in this matter" to request a status conference to discuss the impact of the *AMG Cap. Mgmt.* decision. [Ex. D at 1]. In that email, Mr. Caplan confirmed *Defendants' understanding* that, except with regard to the EDP Defendants, the FTC's claims for equitable monetary relief against Defendants survived the *AMG Cap. Mgmt.* decision:

> As the Court is aware from the FTC's Notice of Filing (dkt. 360), the Supreme Court has issued its opinion in *AMG Capital Mgmt. v. FTC*, No. 19-508 (April 22, 2021). The Supreme Court ruled, as the defendants here have argued, that Section 13(b) of the FTC Act does

22

> not authorize the FTC to obtain monetary relief. That ruling disposes of *most* of the monetary relief sought by the FTC in this case. As to the EDP Defendants, *AMG* precludes the FTC from seeking any monetary relief.

[Ex. D at 1 (emphasis added)].[10] Neither the Robinson Estate nor any other

defendant – all of whom were copied on that email – disputed Mr. Caplan's

admission, made on their behalf, that the *AMG Cap. Mgmt.* decision did not

eliminate the FTC's claims for equitable monetary relief as to any defendant other

than the EDP Defendants. Thus, any implication by the Robinson Estate that it *ever*

believed the FTC did not assert such claims or abandoned such claims is false and

precluded by Defendants' written statements to the Court.

Moreover, the Stay Motion was filed in late July 2020, four months after the

FTC had served its responses to the Defendants' Joint 30(b)(6) Interrogatories and

when third-party fact discovery was on the cusp of closing. [Dkt. 288 at 1-2; Dkt.

295; Dkt. 387-3 at 189]. In that Motion, the iStream Defendants, joined by all

Defendants, discussed the FTC's ability to obtain equitable monetary relief under

Section 19 and the amount of that relief. If the Robinson Estate, or any other

Defendant, had believed it was *in any way* hampered in its ability to respond to or

---

[10] As noted in its motion for summary judgment against the EDP Defendants, the FTC concedes that, post-*AMG Cap. Mgmt.*, it is not seeking equitable monetary relief against the EDP Defendants.

defend against the FTC's claims to equitable monetary relief under Section 19, it could and should have raised those arguments then or sought to engage in further discovery on those issues. Instead, the Estate said nothing either then or after the Court denied the Stay Motion.

        b.    <u>The Robinson Estate cannot use the FTC's Interrogatory Responses to suggest a waiver.</u>

Not only does the Robinson Estate fail to acknowledge its prior (individual and adopted) statements regarding its knowledge of the FTC's extant claims for equitable monetary relief under Section 19 of the FTC Act, it attempts to twist the FTC's responses to Interrogatories – responses served *before* the Stay Motion and May 2021 email to the Court – to support its waiver argument.

As an initial matter, the Robinson Estate does not identify the Interrogatories upon which it is purportedly relying, referencing only "numerous Interrogatory requests seeking the FTC's calculation of monetary relief." [Dkt. 387-1 at 10 (citing SUF 4); Dkt. 387-2 (SUF 4) at 2 (citing the FTC's Response to Interrogatory No. 85 as support for statements relating to the amount of equitable monetary relief)]. The Robinson Estate similarly fails to identify the specific language in the FTC's response to any Interrogatory that it suggests constitutes this affirmative waiver, instead simply noting that the FTC's response contained a

calculation of equitable monetary relief that was equivalent to the amount sought under Section 13(b). [Dkt. 387-1 at 10]. Because Interrogatory No. 85 from Defendants' Joint 30(b)(6) Interrogatories is the only specific Interrogatory identified by the Robinson Estate anywhere in its Motion or Statement of Fact, the FTC will assume Interrogatory No. 85 is the "numerous Interrogatory responses" to which the Estate refers.[11]

Contrary to the Robinson Estate's assertion, in response to Interrogatory No. 85 the FTC did not affirmatively state it premised its calculation of equitable monetary relief solely on Section 13(b) of the FTC Act. Interrogatory No. 85 asked the FTC to "[i]dentify the basis for the FTC's computation of equitable monetary relief as to each defendant." [Dkt. 387-3 at 121]. The FTC objected to the Interrogatory as vague, explaining that it "could be interpreted as seeking either an explanation of the legal theory or specific calculations with regard to each defendant." [*Id.*]. The FTC then explained it had "employed the latter interpretation in responding to this Interrogatory." [*Id.*].

---

[11] The Robinson Estate served no individual Interrogatories or other discovery on the FTC in this matter; thus, it can only be referencing the Defendants' Joint 30(b)(6) Interrogatories.

Moreover, in its response, the FTC referred back to its response to Interrogatory No. 78, which sought information on the FTC's contentions with regard to "the total amount of equitable monetary relief at issue in this action,"[12] stating the basis for its calculation of equitable monetary relief – "gross revenues from sales of Discount Club memberships, less the amount of bank returns" and, if provided by Defendants, less refunds – and stated that, "[a]s a general matter, the FTC's calculations of consumer harm based on transactions processed by the iStream Defendants are set forth in the Declaration of Thomas Van Wazer, produced to Defendants at FTC00732425-33." [Dkt. 387-3 at 121-22]. The FTC then provided individual calculations of the *total* amount of equitable monetary relief as to each defendant or defendant group. [*Id.* at 122-37].

---

[12] Interrogatory No. 78 specifically asked, "If the FTC contends that the total amount of equitable monetary relief at issue in this action is more than the aggregate net revenue generated by the Discount Clubs (i.e., the total sales of the Discount Clubs net of refunds paid to consumers who paid for the Discount Clubs), identify the basis for your calculation." [Dkt. 387-3 at 111-12]. In response, the FTC explained: "The FTC contends that total equitable monetary relief should be calculated by the amount of gross revenues collected, directly or indirectly, by the Defendants from consumers for sales of Discount Club memberships, less the amount of bank returns. As the FTC has repeatedly stated to Defendants during the course of consent negotiations, it also contends that, if Defendants put forth reliable information regarding refunds of such charges paid to and received by individual consumers, the amount of total equitable monetary relief would be reduced to reflect those refunds." *Id.*

26

Specifically with regard to the Hornbeam Entities, the FTC further responded that, "based on summary records produced by iStream," the total equitable monetary relief for the period from "October 2013 through May 2016" was $16,220,920.95. [*Id.* at 127]. The FTC identified Van Wazer's Declaration as well as "the detailed data produced by iStream at FTC00552767-73" as the sources for that calculation. [*Id.*]. With regard to the Robinson Estate, the FTC responded that the Estate was jointly and severally liable for that full amount of $16,220,920.95. [*Id.* at 128].[13]

Contrary to the Robinson Estate's suggestion, the FTC did not affirmatively state that it was seeking equitable monetary relief solely under Section 13(b) of the FTC Act. Consistent with its response to Interrogatory No. 78 and its objection to Interrogatory No. 85, the FTC provided individualized calculations of *total* equitable monetary relief sought in this action, without discussing the specific legal bases. At the time of the FTC's initial Responses, the total amount sought was equal to the amount sought under Section 13(b) of the FTC Act, as every

---

[13] As discussed, *supra*, the iStream data identified in the FTC's original response to Interrogatory No. 85 contains all of the information necessary to identify the amount of cleared Discount Club transactions by payee, by date, and by whether Defendants designated the transaction (on the RCC) as an Internet or telemarketing enrollment. *See* PX 260 (also PX 1164) at 4; Ex. C (sample 4(g) columns); Dkt. 396 at 13.

transaction at issue in this case fell within the scope of the FTC's claims under Sections 5(a) and 13(b) of the FTC Act.

        c.      <u>The FTC did not refuse to respond to discovery requests.</u>

Finally, the Robinson Estate implies that the FTC, in response to unspecified Interrogatories, should have provided a breakdown of the subcategories of its claim for equitable monetary relief and improperly failed to do so. However, the Robinson Estate cannot meet the standard to show the FTC refused to respond to any discovery.

Indeed, the Robinson Estate does not explain how Interrogatory No. 85, the only interrogatory it cites, expressly required the FTC to break down its claims for total equitable monetary relief into subcategories based on different legal claims, and it contains no language that could be read in that manner.[14] Interrogatory No. 85 merely asked the FTC to identify the "basis for the FTC's computation of equitable monetary relief claimed as to each defendant." [Dkt. 387-3 (FTC Resp. Irog No. 85) at 121]. The FTC did so, providing a calculation of the *total* amount of equitable monetary relief sought in this case as to each separate defendant or

---

[14] Although the Robinson Estate makes passing reference to "numerous" interrogatories, it identifies only Interrogatory No. 85.  [Dkt. 387-2 (Robinson Estate SUMF) ¶ 4].

defendant group, identifying the evidence supporting its claims, and summarizing the computations. [*Id*. at 121-137]. As clearly established by the FTC's amended response to Interrogatory No. 85, the evidence identified in its original response (the response discussed here), supported *all* of its claims to equitable monetary relief, both under Section 13(b) and under Section 19. [Ex. B (FTC Am. Resp. Irog. No. 85) at 17-29].

More importantly, if the Robinson Estate believed the FTC's response was incomplete, incorrect, or deficient; it was incumbent upon the Estate to raise those concerns with the FTC and, if still dissatisfied, to move to compel a further response. *See* L.R. 37.1(A)(1) (requiring meet and confer prior to filing motion to compel further discovery responses). Under the Local Rules, such a motion was due no later than the close of discovery, which, under the broadest interpretation, was in September 2020. [Dkt. 288 at 1-2; L.R. 37.1(B) (requiring motions to compel discovery responses to be filed within the time remaining prior to the close of discovery)]. Until now, however, the Robinson Estate has not raised any concerns and, thus, waived any such argument. *Griffin v. GMAC Comm. Fin., LLC*, 2007 WL 521907, at *1 (N.D. Ga. Feb. 15, 2007) (rejecting motion to compel filed one week after the "outermost deadline"); *see also Am. Ent. Collision Ctr., Inc. v.*

*Travelers Prop. & Cas. Co. of Am.*, 2010 WL 11507335, at * (M.D. Fla. Sep. 17, 2010) (granting motion to compel but denying motion to exclude damages evidence because "[s]anctions of this nature are severe and may result in loss of a valid remedy at law"); *Bowers v. Am. Heart Ass'n, Inc.*, 2008 WL 11407360, at *3 (N.D. Ga. Dec. 2, 2008) (denying motion in limine to exclude damages evidence where "to the extent that Defendants have suffered or will suffer any prejudice at all in connection with Plaintiff's damages evidence, the prejudice is at least partially the result of Defendants' own failure to bring the issue of Plaintiff's insufficient disclosures and discovery responses before the Court at an earlier time and Defendants' failure to depose" relevant witnesses).

The Robinson Estate's Motion on this issue, therefore, must be denied. At best, it fails to identify any legal standard to support its Motion. At worst, the Motion is a calculated strategy to avoid seeking discovery from the FTC – or raising concerns about discovery responses – in order to manufacture an argument that is refuted by the Estate's own admissions.[15] *See Bowers*, 2008 WL 11407360, at *3 (finding Defendants "simply waited to cry prejudice").

---

[15] As the court found in *BUD K World Wide*, "Defendant could have, and should have, submitted this issue to the Court long before the eve of trial. Discovery in this case has been closed for over a year, and Defendant never sought to compel responses to the initial disclosures during the discovery period or within a

## **CONCLUSION**

The Robinson Estate challenges relief the FTC is not seeking, fails to provide any legal authority or support for its arguments, and fails to establish that it is entitled to summary judgment, as a matter of fact or law, with regard to the FTC's claims for equitable monetary relief under Section 19 of the FTC Act. The Motion must be denied.

---

reasonable time thereafter. Under those circumstances, the Court is not at all impressed with Defendant's contention that Plaintiff is somehow seeking a trial by ambush or that Plaintiff's failure to provide a computation has prejudiced Defendant." *BUD K World Wide, Inc. v. Wholesale Gallery, Inc.*, 2015 WL 12976110, at *1 (N.D. Ga. Nov. 2, 2015).

Dated:  October 29, 2021             Respectfully submitted,

  s/    Philip Z. Brown
KORIN EWING FELIX
HONG PARK
PHILIP Z. BROWN
*Counsel for Plaintiff the Federal Trade Commission*
600 Pennsylvania Avenue NW, CC-9528
Washington, DC 20580
Telephone:  (202) 326-3556 (Felix), -2158 (Park);
-2979 (Brown)
Email:  kfelix@ftc.gov, hpark@ftc.gov,
pbrown1@ftc.gov


  s/    Anna M. Burns
ANNA M. BURNS
Georgia Bar  #558234
*Counsel for Plaintiff the Federal Trade Commission*
Federal Trade Commission
225 Peachtree Street, NE, Suite 1500
Atlanta, GA 30303
Telephone:  (404) 656-1350
Email:  aburns@ftc.gov

## LR 5.1 CERTIFICATION

Pursuant to LR 7.1(D), I hereby certify that this motion was prepared with

14-point Times New Roman font in accordance with LR 5.1(C).

<u> s/     Philip Z. Brown         </u>
Counsel for Plaintiff
Federal Trade Commission

## **CERTIFICATE OF SERVICE**

I hereby certify that on October 29, 2021, I electronically filed Plaintiff

Federal Trade Commission's Opposition To Defendant Patricia Brandmeier

Robinson As Executor Of The Estate Of Jerry L. Robinson's Motion For Summary

Judgment with the Clerk of Court using the CM/ECF system. Notice of this filing

will be sent to counsel of record at the email addresses registered by them with the

Court by operation of the Court's electronic filing system. Parties may access this

filing through the Court's system.

I further certify that I served this motion and its attachments by email to the

following non-CM/ECF participants:

Defendant Mark Ward

Defendant Earl G. Robinson

Defendant James McCarter

 s/     Philip Z. Brown
Counsel for Plaintiff
Federal Trade Commission

34